# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

KATHERINE L. CAITO,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　*Plaintiff*,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　　CA NO. 1:13-CV-429-M-LDA
vs.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
MORTGAGE ELECTRONIC　　　　　　　　)
REGISTRATION SYSTEMS; CITIBANK AS　)
TRUSTEE FOR AMERICAN HOME　　　　　)
MORTGAGE ASSETS TRUST 2006-3　　　　)
MORTGAGE-BACKED PASS-THROUGH　　　)
CERTIFICATES SERIES 2006-3　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　*Defendants*.　　　　　　　)

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF SAID OPPOSITION

## INTRODUCTION

The Defendants' have submitted to this Court a Motion to Dismiss, and Memorandum of Law in Support of said motion, which challenges the Plaintiff's legal theory that the foreclosure sale conducted on the Plaintiff's property by the Defendants is void because the assignment of the subject mortgage and transfer/endorsement of the note secured thereunder are allegedly void. The Defendants' argue that the Plaintiff's lack standing to make their claim because they are not party to, nor are they third party beneficiaries to the Pooling and Servicing Agreement of the American Home Mortgage Assets Trust 2006-3 (the "Trust"), a trust established under New York Trust Law, that purportedly claims to be the owner of the subject mortgage and note. The Plaintiff sets forth, however, that well settled case law in the State of Rhode Island and the First Circuit Court of Appeals has clearly established that a homeowner does have standing to

challenge an assignment or transfer of a mortgage loan if the allegations establish that the assignment or transfer of the mortgage is void.[1]

The Defendants further contend that the Plaintiff does not have standing to bring her claims because the assignment and transfer of the mortgage into the Trust after the closing date of said Trust, as an alleged unauthorized ultra vires act or amendment to the PSA made by the trustee, may be ratified by the beneficiaries of the Trust and are therefore voidable and not void. The Defendants' purport to rely on First Circuit court decisions in support of their argument that have failed to analyze with any specificity: 1) the forum state's choice of law rules with regard to the application of New York Trust Law; 2) whether or not an assignment or transfer of a mortgage to a mortgage backed trust established under New York Trust Law after the closing date of the Trust is void in accordance with New York Trust Law; 3) whether or not the terms of the Pooling and Servicing Agreements that establish the trusts themselves negate the possibility of ratification of an ultra vires act or amendment thereby making an assignment or transfer of a mortgage after the closing date of the trust void; and 4) whether or not an assignment or transfer of a mortgage into to trust may be void if it is an illegal act.[2]

---

[1]   Culhane v. Aurora Loan Servs. Of Neb., 708 F.3d 282, 289 (1st Cir 2013) ("mortgagor would be deprived of a means to assert her legal protections without having standing to sue"); Mruk v. Mort. Elec. Reg. Sys., Inc., 82 A.3d 327 (R.I. 2013) ("unlike the usual third parties to contracts, the homeowners here are not attempting to assert the rights of one of the contracting parties; instead, they are asserting their own rights not to have their homes unlawfully foreclosed upon"); Wilson v. HSBC Mortgage Services Inc., 744 F.3d 1, 10 (1st Cir. 2014) ("homeowners sought to establish that the mortgage transfer from the assignor to the assignee – who in turn attempted to foreclose – was void at the outset. Through the allegation, the plaintiffs established standing because they challenged the foreclosing entity's status as a mortgagee of their property")

[2]   Woods v. Wells Fargo Bank, N. A., 733 F.3d 349 (1st Cir, 2013) ("claims that merely assert procedural infirmities in the assignment of a mortgage, such as a failure to abide by the terms of a governing trust agreement, are barred for lack of standing" Plaintiffs set forth that the alleged violation of the Trust's terms in this case constitute more than just a procedural infirmity, can not be ratified, and therefore are void.); Butler v. Deutsche Bank National Trust Co. Am., 748 F.3d 28 (1st Cir. 2014) ("Butler fails to provide any developed analysis of Massachusetts – the forum state – choice of law rules, skipping over this predicate question and offering only his interpretation of the content and effect of New York law"; "we find waived Butler's unseasonabley late argument that New York law applies to make void Deutsche Bank's receipt of Butler's mortgage"); Jepson v. HSBC Bank USA Nat'l Assn, No. 13-1364 (1st Cir., June 23, 2014) ("any argument that

The Plaintiff sets forth that an ultra vires or unauthorized act of a trustee that is subsequently ratified by the beneficiaries is essentially an amendment of the Trust's terms. The decisions relied on by the Defendants assume that generally under the common law of the State of New York, amendments to Pooling and Servicing Agreements can be ratified by the parties. The Plaintiff sets forth, however, that changing the terms of the Pooling and Servicing Agreements themselves, under any circumstance, is an assumption that patently misguided. The Defendants' memorandum in this case is belied by the very document they rest their argument upon, as the Pooling and Servicing Agreement related to Plaintiff's claims herein, states quite clearly that the agreement *cannot be amended* if such an amendment would cause the Trust to lose its tax status as a Real Estate Mortgage Investment Conduit, or REMIC. As such, the assignment and transfer, should they cause the Trust to cease being a REMIC as alleged, are void, not voidable, and Plaintiff does have standing to make her claims as alleged in her complaint.

In order to establish whether or not Plaintiff has standing in this case the Plaintiff sets forth a three part detailed analysis: 1) of the established doctrine of standing; 2) what constitutes a void assignment; and 3) the reasons why the assignment itself is void. Plaintiff herein endeavors to demonstrate to this Honorable Court that she does in fact do have standing, that the assignment of the subject mortgage and the transfer/endorsement of the note thereunder are void, not voidable, and that the Defendants' argument in support of their Motion Dismiss, fails as a matter of law.

Therefore, for the reasons as more fully set forth herein, the Plaintiff objects to the Defendants' Motion to Dismiss and requests this Honorable Court deny said motion.

New York Law governs the analysis of this challenge is waived because the Jepsons did not present this argument to the district court")

**STANDARD OF REVIEW**

In the State of Rhode Island a Rule 12(b)(6) motion to dismiss should be granted only "when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiff's claim." *Palazzo v. Alves*, 944 A.2d 144, 149-50 (R.I. 2008) (quoting *Ellis v. Rhode Island Public Transit Authority*, 586 A.2d 1055, 1057 (R.I. 1991)); see also *McKenna v. Williams*, 874 A.2d 217, 225 (R.I. 2005) ("[I]t is our function to examine the complaint to determine if plaintiffs are entitled to relief under any conceivable set of facts."). In undertaking this review, the Court is "confined to the four corners of the complaint and must assume all allegations are true, resolving any doubts in plaintiff's favor." *Minardi*, 21 A.3d at 278.

**ARGUMENT**

**STANDING**

"Standing- a litigant's right to be in the courtroom- must be established in every case." (*Wilson v. HSBC Mortgage Services, Inc.*, WL 563457 (1st Cir. 2014); *Culhane v. Aurora Loan Servs. of Neb.,* 708 F.3d 282, 289 (1stCir. 2013)). A plaintiff must show that he or she has a personal stake in the outcome of the litigation by "establish[ing] each part of a familiar triad: injury, causation, and redressability." (*Culhane,* 708 F.3d, 289 (citing *Katz v. Pershing, LLC,* 672 F.3d 64, 71 (1st Cir. 2012)). Furthermore, a plaintiff must also generally show "that his claim is premised on his own legal rights (as opposed to those of a third party), that his claim is not merely a generalized grievance, and that it falls within the zone of interests protected by the law invoked." (*Pagan v. Calderon,* 448 F.3d 16, 27 (1st Cir. 2006)).

""The sine qua non of standing is that a plaintiff must have a personal stake in the outcome." (See; *In re Review of Proposed Town of New Shoreham Project*, 19 A.3d 1226, 1227

(R.I. 2011) (mem.) (quoting *Blackstone Valley Chamber of Commerce v. Public Utilities Commission*, 452 A.2d 931, 933 (R.I. 1982) (stating that "the party seeking relief [must have] alleged such a personal stake in the outcome of the controversy as to ensure concrete adverseness that sharpens the presentation of the issues upon which the court depends for an illumination of the questions presented.")). "This requirement was summarized by the United States Supreme Court in the seminal decision on standing, *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), .... "[T]he plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). Moreover, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly trace[able] to the challenged action of the defendant, and not th[e] result [of] the independent action of some third party not before the court." Id. Lastly, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision." Id. at 561."" (*Mruk v. Mort. Elec. Registration Sys., Inc.*, 82 A.3d 527 (R.I. 2013)).

In *Culhane*, when analyzing the substantive law of Massachusetts, the First Circuit focused on the fact that, by statute, mortgagors have a legally cognizable right to ensure that any attempted foreclosure on their home is lawful. (*Culhane,* 708 F.3d, 290). "[A] Massachusetts mortgagor would be deprived of a means to assert her legal protections without having standing to sue." Id. It is with the basic requirements of standing in mind that Plaintiffs' offer their analysis of the question of whether a mortgagor, although he or she is not a party to a Pooling and Servicing Agreement or Trust Agreement, has standing to challenge those agreements, as they may affect a foreclosure of his or her mortgage. It is beyond dispute that a homeowner

whose home is foreclosed has suffered a concrete and particularized injury that gives the homeowner a personal stake in the outcome of litigation challenging a foreclosure. Under the circumstances as alleged by Plaintiff, there is a causal connection between the injury and the challenged action; the ownership of the subject mortgage and note is the basis of the right to foreclose being asserted by the foreclosing entity. Further, the alleged injury would be redressed by a decision in the Plaintiff's favor; if it is determined that the assignment of the subject mortgage and transfer/endorsement of the note are in fact void, then a foreclosure sale conducted pursuant to an invalid exercise of the statutory power of sale would be unlawful and therefore void itself.

The Defendants' rest their argument on court decisions which have held that in general, strangers to a contract lack standing to either assert rights under that contract or challenge its validity. However, as the First Circuit has determined in cases involving mortgage assignments "these cases paint with too broad a brush." (*Culhane*, 708 F.3d 290, See also: *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 354 (1st Cir.2013)) and "unlike the usual third parties to contracts, the homeowners here are not attempting to assert the rights of one of the contracting parties; instead, they are asserting their own rights not to have their homes unlawfully foreclosed upon." (See; *Mruk v. Mort. Elec. Registration Sys., Inc.,* 82 A.3d 527 (R.I. 2013)).

"The common thread running through *Culhane* and *Woods* is the allegation that the foreclosing entity had no right to foreclose, as it had never become the mortgage holder in the first place. In other words, the homeowners sought to establish that the mortgage transfer from the assignor to the assignee--who in turn attempted to foreclose--was void at the outset. Through this allegation, the plaintiffs in those cases established standing because they

challenged the foreclosing entity's status as mortgagee of their property." (*Wilson v. HSBC Mortgage Services, Inc.*, WL 563457 (1st Cir. 2014)).

Logic would hold here that the Plaintiff has also established standing because she challenges that the foreclosing entity lacked the authority to foreclose based on their allegation that the mortgage transfer from the assignor to the assignee--who in turn attempted to foreclose--was also void at the outset. "Any effort to foreclose by a party lacking jurisdiction and authority to carry out a foreclosure . . . is void." (*U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 651, 941 N.E.2d 50 (2011)). Mortgagors in Rhode Island, as in Massachusetts, are in the unusual position of facing foreclosure and possible eviction from their homes at the hands of entities with which they lack privity. Absent standing to challenge the Pooling and Servicing by which the purported authority to foreclose has been derived, Plaintiff homeowners' here would be without legal recourse to contest their alleged injury.

Accordingly, "[t]here is no principled basis for employing standing doctrine as a sword to deprive mortgagors of legal protection conferred upon them under state law." (See; *Culhane*, at 291), and this Court should hold that homeowners in Rhode Island have standing, however narrow, to challenge the Pooling and Servicing Agreements associated with the securitizations of their mortgages to the extent necessary to contest the foreclosing entity's authority to foreclose. The "narrowness" referred to in *Culhane* is confined to assignments which are void, and the example given by the First Circuit in *Culhane* is that of an assignor assigning a mortgage when it had nothing to assign. Here, the reverse is at issue. Plaintiff has alleged that the assignee cannot, as a matter of law, accept the assignment, and that the very act itself is wholly void from the outset, or void *ab inito*. In order for Plaintiff to establish standing, the assignment itself must be void, not merely voidable.

In establishing that the assignment into the Trust is void the Plaintiff sets forth that the Pooling and Servicing Agreement contains a specific clause that absolutely prohibits the assignment of the mortgage and/or transfer/endorsement of the note themselves, not related to generalized amendments that can be ratified by the parties thereto. Furthermore, the Plaintiff establishes that the assignment and/or transfer violates that specific provision, thus rendering the assignment and/or transfer void, and not merely voidable. What follows below fully supports those positions.

**THE ASSIGNMENT IS VOID, NOT MERELY VOIDABLE**

> "A void contract can not be ratified, it binds no one and is a nullity" 27 Williston on Contracts § 70:13 (4th ed.)

> "a void contract . . . is no contract whatsoever" and "cannot be validated by ratification" 17 C.J.S. Contracts § 4

The Defendants' argue that because an amendment to the Pooling and Servicing Agreement (PSA) can be ratified, allowing for the assignment of the subject mortgage to the Trust, regardless of the effect such an assignment would have on the Trust's status as REMIC, renders the assignment merely voidable, and not void, thereby stripping Plaintiff of the standing she asserts. The Plaintiff disagrees with the Defendants' analysis because the assignment, as an act that jeopardizes the REMIC status of the Trust, is not just a mere unauthorized act that can be ratified but an act that is specifically forbidden by the Trust as well as a prohibited transaction under the IRS Code governing REMICs. Furthermore the Plaintiff sets forth that if the Defendant is unlawfully obtaining tax benefits under the IRS Code by asserting REMIC Trust status while assigning the mortgage as a prohibited transaction, than the assignment is an illegal act that is in contravention of public policy and void.

The ultra vires doctrine was created under the tenet that when an act is performed or a transaction is carried out that is not authorized such an act is null and void. Ashbury Railway v. Riche (1875) LR 7 HL 653, 671, 672. Likewise it is not a surprise that New York Trust Law with regard to ultra vires acts mandates that "every … act of a trustee in contravention of the trust…is void." N.Y. Est. Powers & Trusts Law 7-2.4. This New York Trust Law statute has been interpreted clearly and succinctly in In Re Saldivar where the U.S. Bankruptcy Court for the Southern District of Texas stated that "based on the Erobobo decision and the plain language of N.Y. Est Powers & Trusts Law 7-2.4, the Court finds that under New York law, assignment of the Saldivars' Note after the start up day is void ab initio. As such, none of the Saldivars' claims will be dismissed for lack of standing". In Re Saldivar 11-10689.

The Defendants cite multiple decisions to support the contention that the word "void" means "voidable" because, as a general concept, an ultra vires act of a trustee can be ratified. None of these decisions, however, contain a detailed analysis of the New York legislatures reasoning behind the use of the word "void" in EPTL 7-2.4 as it relates to the facts of this case. A proper and more detailed examination of whether or not ultra vires or illegal acts are "void" in the State of New York reveals that the Defendants' contention and the cases allegedly supporting the ambiguous nonsensical notion that "void" and "voidable" are used interchangeably are false and misleading. While New York courts adopt "a more liberal rule, holding that not all ultra vires contracts are void, but some are voidable only", they also allow one seeking to void a contract to "plead the facts entitling it to do so". Dyer v. Broadway Central Bank, 252 NY 430, 435; 169 NE 636 (1930). In this case the Plaintiff has pled facts entitling it to declare the assignment void and thus not capable of ratification because the assignment is a "Prohibited Transaction" under the IRS Code governing REMICs as well as a

transaction expressly not allowed under the PSA.  <u>Pratt v. Short</u>, 79 NY 437 (1880); <u>Nassau Bank v. Jones</u>, 95 NY 15; <u>Gause v. Commonwealth Trust Co</u>. 196 NY 134 (Contracts . . . . prohibited or made in the exercise of a power expressly denied, are of course void); <u>Bath Gas Light Company v. Claffy</u>, 151 NY 24, 30 (1896) ("Another principle of general recognition is that a corporation can not enter into or bind itself by a contract which is expressly prohibited by its charter or by statute, and in the application of this principle it is immaterial that the contract, except for the prohibition, would be lawful.").

The case law with regard to the ratification of ultra vires acts in accordance with Rhode Island Law is scarce as most cases involve a municipality that may invoke ultra vires to void a contract.  One case, however, allowed ratification of an ultra vires act when the act was "for a purpose authorized by its charter" and the corporation obtained the benefit of the plaintiff's performance.  <u>Adam v. New England Investment Co.</u>, 33 R.I. 193 (1911) 80 A 426.   Unlike the Defendant in <u>Adam</u>, the Defendant in this case clearly violated the purpose of the REMIC Trust by accepting the assignment of the mortgage after the closing date of the Trust because the assignment was a "Prohibited Transaction" that was 100% taxable in accordance with the IRS code and therefore the Trust did not receive any consideration for this transaction.  <u>Smith Granite Co. v. Newall & Co.</u>, 22 R.I. 295, 297, 301 (1900) ("that execution of said assignment … was with out consideration and ultra vires" and "void").

The Defendants claim that the Plaintiff relies substantially on one case in support of her assertion that the assignment of mortgage in this case is void; (<u>Wells Fargo v. Erobobo</u>, 39 Misc. 3d 1220(A) (N.Y. Sip. Ct. 2013)).   A detailed and proper research and analysis of New York law reveals that this statement made by the Defendants, as well as the cases in support of this contention, are false and misleading.  The <u>Erobobo</u> Court held that the trustee's acceptance

of an assignment after the closing date of the trust was "void" in accordance with EPTL 7-2.4. The Defendants cite multiple cases in multiple jurisdictions that attempt to refute the holding in Erobobo because supposively New York law means "voidable" when it clearly uses the word "void'. Aside from disregarding the clear intent of the New York legislature in its use of the word "void" rather than "voidable" in EPTL 7-2.4, it appears that the Defendants and the cases in support of this argument fail to acknowledge key distinctions in their analysis. A large majority of the cases that support the "voidable" argument cite Mooney v. Madden, 193 A.2d 933, 597 N.Y.S. 535, 540 (N.Y. App. Div 1993) to establish that under New York Law ultra vires acts of a trustee are "voidable" because of the possibility of ratification by the beneficiaries. The Mooney case, however, was only about acts that are simply unauthorized or outside the scope of authority in the trust agreement. Mooney, and the cases that cite it in support of the "voidable" argument, do not analyze whether or not a direct violation of an express prohibition in the trust agreement is "void" nor do they analyze whether or not an act in direct violation of a statute is "void" because the facts of Mooney were not such a scenario. The Mooney decision is literally a two-page decision in which the question before the court was "whether a 1962 agreement by the trustees of testamentary trusts to vote the shares of stock in a certain way is binding upon the trustees and enforceable so that votes cast in violation of that agreement may be set aside and declared a nullity." Id. at 933. The Mooney court did not provide any more details as to the facts underlying its' decision and it certainly did not state that the trustees' act that was outside the scope of authority was a direct violation of an express prohibition of the trust. Therefore, the Mooney case and the cases in support of the "voidable" argument[3] are lacking key details in their analysis and are too broad and general (Ironically the

---

[3] Particularly including but not limited to the Second Circuit's decision in Rajamin v. Deutsche Bank Nat'l Trust Co., 757 F3d 79, 90 (2d Cir. 2014) and Bank of Am. Nat'l Ass'n v. Bassman FBT, L.L.C., 981 N.E.2d 1 (Ill.

exact thing these proponents say about <u>Erobobo</u>).  None of the cases cited in the Defendants'

memorandum that support the "voidable" argument analyze whether or not the assignment is a

direct violation of an express prohibition in the Trust document as well as a Prohibited

Transaction in accordance with the IRS Code.

Within the past year the United States Court of Appeals for the Eighth Circuit decided a

matter in which a major servicer and provider of trustee services, Wells Fargo Bank, N.A.,

agreed that such an assignment is in fact "void" under similar facts.  <u>Johnson v. Wells Fargo</u>

<u>Bank, N.A.</u>, 744 F.3d 539, 541 (8th Cir 02/25/2014).   In <u>Johnson</u>, Wells Fargo agreed on a

motion for summary judgment that if the note and mortgage were not acquired by the trust until

after the start up/ closing date of the trust than the assignment of mortgage is prohibited by the

trust agreement and void under New York law EPTL 7-2.4 and the trust may not foreclose.  <u>Id</u>.

In <u>Johnson</u> the Eight Circuit further explained in footnote 2:

> "As a REMIC, the Trust's income is not subject to taxation at the
> corporate level.  See 26 U.S.C. 860A.  For tax reasons . . . the
> terms of the trust agreement prohibit the Trust from acquiring
> "non-qualified" mortgages.   See 26 U.S.C. 860 F & G.   For
> purposes of this case, a mortgage is considered "non-qualified" if
> it was not in possession of the Trust on the start up date of the
> Trust.  See 26 U.S.C. 860 G (a)(3).  Finally, under New York trust
> law, any action taken in violation of the trust agreement is void.
> See N.Y. Est. Powers & Trusts Law. 7-2.4" <u>Id</u>. See Ft Nt 2

Therefore, it is clear that not only did the Eighth Circuit understand and agree that an

assignment of a mortgage in direct violation of an express prohibition of a REMIC trust

agreement is "void" in accordance with New York law, but the Defendant, Wells Fargo,

understood this and agreed as well.  Now Wells Fargo is attempting to assert a contrary position

with decisions that fail to analyze in any detail aside from a general assumption that

unauthorized acts may be ratified and are thus voidable.

App. Ct. 2012)

The Plaintiff asserts that an analysis as to whether or not an act of a trustee that is a direct violation of an express prohibition of a trust as well as a prohibited transaction in accordance with the IRS Code governing REMICs is essential to a complete analysis as to whether or not this constitutes a "void" transaction and that a complete analysis is missing in all the decisions supporting the "voidable" argument thus far.  A closer look at cases in New York that analyze and apply EPTL 7-2.4 show that it was indeed the intent of the New York legislature to use the word "void" because "void" is exactly what it intended.  Knight v. Knight, 589 N.Y.S. 195, 197 (App. Div. 1992) (void assignment can not be ratified); Dye v. Lewis, 67 Misc 2d 426, 428 (1971) (unauthorized act ratified but then held void *citing* Kaufman v. Flagg Corp. 227 App. Div 98; First Nat. Bank v. National Broadway Bank, 156 N.Y. 457) (Illegal acts of Trustees are not binding); In Matter of Doman, 2011-10910 (2d Dept 10-30-2013) 2013 N.Y. Slip. Op 07041 (payment of distributions from sale of real estate that changed favorable tax status of trust were deemed void under EPTL 7-2.4 and returned to trust);  In Re Erda Adler, 79 A.D.3d. 426 (1st Dept. 2010) (trust provisions are not altered by the parties stipulation of settlement);  Matter of Newlin, 119 Misc.2d 815, 820 (1982), 465 N.Y.S.2d 102 citing Genet v. Hunt, 113 NY 158 (1889), 21 NE 91 ("the statute makes every conveyance or other act of the trustees of an express trust in lands, in contravention of the trust, absolutely void"); Medlin v. Johnson (W.D.N.C. 3-28-2014) 3:13-317-RJC at p. 10 (actions of trustee "were in direct contravention of both New York law and the terms of the trust and are void")

A clear understanding that the law in New York mandates that an assignment that is expressly forbidden by the terms of trust is "void" was explained in Aurora Loan Services LLC v. Scheller, 2009-22839 (5-22-2014), 2014 N.Y. Slip. Op. 31416(U).   In Aurora the court reasoned and explained as follows:

> "For well over one hundred years, it has been the law in New York that where the transfer of a mortgage to a third party is effectuated in a manner that contravenes the express terms of a governing trust, the transfer is ultra vires and is void. <u>Kirsh v. Tozier</u>, 143 NY 390 (1894). Indeed, it follows logically that where the Trustee's acts are ultra vires, all successors and subsequent assignees are charged with constructive knowledge of the express terms of the trust and hence cannot claim to be bona fide purchasers thereafter inasmuch as they would either know or would have reason to know that anu interest transferred would be subject to the operative terms of the trust, <u>Smith v. Kidd</u>, 68 N.Y. 130 (1877), <u>McPherson v. Rollins</u>, 107 N.Y. 316 (1887)

The <u>Glaski v. Bank of America, NA et al</u>, decision also provides a detailed and proper analysis of the relevant factual consideration when analyzing an ultra vires act that is expressly prohibited under a PSA established under New York Law. In <u>Glaski</u>, the court reasoned that: 1) the allegation that the trust was formed under New York Law supports the conclusion that New York law governs the operation of the trust[4]; 2) that the purpose of the word "void" in EPTL 7-2.4 is "to protect trust beneficiaries from unauthorized actions by the trustee (See *Turano, Practice Commentaries, McKinney's Consolidated Laws of New York*, Book 17B, EPTL 7-2.4); and 3) that EPTL "provides a legal basis for concluding that the trustee's attempt to accept a loan after the closing date would be void as an act in contravention of the trust document". <u>Id</u>. at . The Glaski court analyzed the intention of the statute's use of the word "void" in the context of an assignment into a securitized REMIC Trust after the closing date of the Trust as follows:

> "We are aware that some courts have considered the role of New York law and rejected the post-closing date theory on the grounds that the New York statute is not interpreted literally, but treats acts in contravention of the trust instrument as merely *voidable.* (*Calderon v. Bank of America, N.A.* (W.D. Tex., Apr. 23, 2013, No. SA:12-CV-00121-DAE) __ F.Supp.2d __, [2013 WL

---

[4]    Rhode Island Trust Law also supports the contention that the choice of law should be New York. See R.I.G.L. 18-13-19(b) A transfer made pursuant to an act of another state substantially similar to this chapter is governed by the law of that state and may be enforced in this state.

1741951 at p. 12][transfer of plaintiffs' note, if it violated PSA, would merely be voidable and therefore plaintiffs do not have standing to challenge it]; *Bank of America N.A. v. Bassman FBT, LLC* (Ill.Ct.App. 2012) 981 NE2d. 1, 8 [following cases that treat *ultra vires* acts as merely voidable].)

Despite the foregoing cases, we will join those courts that have read the New York statute literally. We recognize that a literal reading and application of the statute may not always be appropriate because, in some contexts, a literal reading might defeat the statutory purpose by harming, rather than protecting, the beneficiaries of the trust. In this case, however, we believe applying the statute to void the attempted transfer is justified because it protects the beneficiaries of the WaMu Securitized Trust from the potential adverse tax consequences of the trust losing its status as a REMIC trust under the Internal Revenue Code. Because the literal interpretation furthers the statutory purpose, we join the position stated by a New York Court approximately two months ago: 'Under New York Trust Law, every sale, conveyance or other act of the trustee in contravention of the trust is void EPTL 7-2.4. Therefore, the acceptance of the note and mortgage by the trustee after the date the trust closed, would be void." (*Wells Fargo Bank v. Erobobo* (Apr. 29, 2013) 39 Misc.3d 1220 (A), 2013 WL 1831799, slip opn. P. 8; see Levitin & Twomey, *Mortgage Servicing, supra,* 28 Yale J. on Reg. at p. 14, fn. 35 [under New York law, any transfer to the trust in contravention of the trust documents is void].) Relying on *Erobobo*, a bankruptcy court recently concluded "that under New York law, assignment of the Saldivars' Note after the start up day is void *ab initio*. As such none of the Saldivars' claims will be dismissed for lack of standing." (*In re Saldivar* (Bankr.S.D. Tex., Jun. 5, 2013, No. 11-10689) WL 2452699 at p. 4)

We conclude that Glaski's factual allegations regarding post-closing date attempts to transfer his deed of trust into the WaMu Securitized Trust are sufficient to state a basis for concluding the attempted transfers are void. As a result, Glaski has a stated cognizable claim for wrongful foreclosure under the theory that the entity invoking the power of sale (i.e., Bank of America in its capacity as trustee for the WaMu securitized trust) was not the holder of the Glaski deed of trust"

In light of the analysis set forth in Glaski the Plaintiff asserts that a simple generalized contention that "void" means "voidable" because generally ultra vires acts may be ratified under New York law is not a sufficient analysis of the law and facts surrounding their allegations.

The Plaintiff sets forth that the ratification of an ultra vires act is at best an exception and not a rule as the simple, plain and clear language of the statute states that an act in contravention of the trust is "void" and the patent meaning of the ultra vires doctrine is that unauthorized acts are void not voidable. Furthermore any contention that the New York legislature meant "voidable" not "void" is clearly skipping a proper analysis. Likewise, the Plaintiff asserts that the ratification exception is limited by acts that are expressly prohibited. A historical analysis of what acts may or may not be determined to be ultra vires included such limitations.[5]

The issue of whether or not the ratification exception applies to acts that violate an express prohibition in a PSA has not been ruled on directly by the New York Court of Appeals. (See Jepson v. Bank of N.Y. Mellon, 2014 U.S. Dist. LEXUS 64712 (N.D. Ill. May 9, 2014). Furthermore, in support of their contention that the assignment in this case is voidable because it may be ratified the Defendants cite a large number of cases that fail to address this issue directly. Rajamin v. Deutsche Bank Nat. Trust Co., 757 F.3d 79, 89 (2014) and Tran v. Bank of New York, 13 CIV 580 (RPP), 2014 WL 1225575 (S.D.N.Y. Mar 24, 2014). In Rajamin the Second Circuit reasoned that "as unauthorized acts of the Trustee may be ratified by the trust beneficiaries such acts are not void but voidable". In Tran the Court reasoned that "trust beneficiaries need not ratify the act to render an act voidable…rather, the fact that trust beneficiaries could ratify such an act is sufficient to render it voidable." The pooling and servicing agreement in this case, however, expressly contradicts this assessment. Unlike the

---

[5] "Whatever may fairly be regarded as incidental or consequential upon those things specified in the memorandum of association as object ought not to be held ultra vires unless expressly prohibited." Attorney General v. Great Eastern Railway Co., (1880) 5 AC 473 (HL)

Mortgagors in <u>Tran</u> and <u>Rajamin</u> (and the many other cases cited by the Defendants), the Plaintiff sets forth that the Trust in this case specifically and expressly prohibits acts or amendments that jeopardize the REMIC status of the Trust. Therefore, since an act that is ratified is essentially an amendment to the Trust, the Plaintiff asserts that an ultra vires assignment made after the closing date of the trust as in this case can not occur under any circumstance and is therefore void.

With respect to amendment provisions contained in the Pooling and Servicing Agreement of the subject matter Trust, the PSA states as follows;

> None of the Company, the Master Servicer or the Trustee shall sell, dispose of or substitute for any of the Mortgage Loans (except in connection with (i) the foreclosure of a Mortgage Loan, including but not limited to, the acquisition or sale of a Mortgaged Property acquired by deed in lieu of foreclosure, (ii) the bankruptcy of the Trust Fund, (iii) the termination of any Trust REMIC pursuant to Article IX of this Agreement, (iv) a substitution pursuant to Article II of this Agreement or (v) a purchase of Mortgage Loans pursuant to Article II or III of this Agreement), nor acquire any assets for the Trust Fund (other than REO Property acquired in respect of a defaulted Mortgage Loan), nor sell or dispose of any investments in the Certificate Account or Distribution Account for gain, nor accept any contributions to the REMICs after the Closing Date (other than a Eligible Substitute Mortgage Loan delivered in accordance with Section 2.04), unless each such party has received an Opinion of Counsel, addressed to the Trustee (at the expense of the party seeking to cause such sale, disposition, substitution, acquisition or contribution but in no event at the expense of the Trustee) that such sale, disposition, substitution, acquisition or contribution will not (a) affect adversely the status of any Trust REMIC as REMICs or (b) cause the Trust Fund to be subject to a tax on "prohibited transactions" or "contributions" pursuant to the REMIC Provisions. (See: Exhibit A, PSA Article X "REMIC Provisions", Section 10.02, "Prohibited Transactions and Activities")

> Notwithstanding any contrary provision of this Agreement, the Trustee shall not consent to any amendment to this Agreement

> unless … such amendment will not result in the imposition of any tax on any Trust REMIC pursuant to the REMIC Provisions or result in the imposition of any tax on the Grantor Trust, or cause any Trust REMIC to fail to qualify as a REMIC ...
> (See: Exhibit A, PSA Article XI "Miscellaneous Provisions", Section 11.01, "Amendment")[6].

This provision, contained in the PSA, makes clear that an amendment affecting the Trust's status as a REMIC cannot be ratified by the parties to the PSA. In other words, an amendment cannot be ratified by the parties to the PSA, which would allow the Trustee to accept an assignment of a mortgage (and/or transfer of a note) to the Trust, if that assignment would terminate the Trust's status as a REMIC. Using the logic of the Defendants' argument, if the assignment causes the imposition of any tax on any Trust REMIC or the Certificateholders or cause any such Trust REMIC to fail to qualify as a REMIC, then no such amendment can be ratified by the parties to the PSA, allowing for such a transaction to occur. If the assignment of Plaintiff's mortgage causes any of these events to occur, then no ratification of an amendment to the PSA can be made to render the act of accepting the assignment merely voidable, rendering the act wholly void, and if the Act is determined to be void, then the Plaintiff has indeed, contrary to Defendants' argument, established standing.

## EFFECT OF 26 U.S.C. § 860

The cases that set forth the concept of voidability as opposed to void when analyzing ultra vires or illegal acts is largely premised upon the liability of a company or trust and the ability of a company or trust to inequitably escape liability while retaining the benefits of a transaction by declaring an ultra vires transaction null and void. Equity would dictate that such

---

[6] Exhibit A is an excerpt page from the entire Pooling and Servicing Agreement of the American Home Mortgage Assets Trust 2006-3. The complete document can be found on the Securities and Exchange Commissions' public information website at;
http://www.sec.gov/Archives/edgar/data/1369168/000088237706002876/d542626_ex4-1.htm, and is incorporated by reference and entered herein.

transactions be voidable so that the parties entering into the transactions with the trust or corporation have some recourse. In this case, however, the beneficiaries of the trust must be protected so that the trustee may not enter into transactions that jeopardize the REMIC status of the trust since that is the entire purpose of a REMIC Trust. This protection of the Trust's status as a REMIC is the exact type of protection EPTL 7-2.4 and the PSA was designed and intended to protect. Therefore, in order to determine whether or not the assignment at issue is void, it must be determined that the assignment of the mortgage to the Trust, as alleged by Plaintiffs', "cause[s] the imposition of… tax on any Trust REMIC or the Certificateholders or cause[s] any such Trust REMIC to fail to qualify as a REMIC…"

It is important to note the distinction between ultra vires and illegal transactions that are expressly prohibited or against public policy. In this case the assignment is not just an ultra vires transaction but an illegal transaction because it is an act that is expressly prohibited by the Trust as well as a "Prohibited Transaction" as defined by the IRS Code governing REMICs. An illegal transaction is one that contravenes some positive law, statute, or charter, or is against public policy. <u>Staacke v. Routledge</u>, 111 Tex 489, 241 SW 994 (1922). Therefore, an illegal transaction such as the assignment in this case is illegal and void. [See <u>Runcie v. Corn Exchange Bank Trust Co</u>, 6 N.Y.S. 2d 616 (1938); <u>Cartwright v. Albuquerque Hotel Co.</u> 36 N.M. 189, 11 P2d 261 (1932); <u>Baird v. McDaniel Printing Co.</u>, 25 Tenn App; 144, 148 153 SW2d 135, 138 (1941) "transactions which are illegal because prohibited by statute are void, and can not support an action nor become enforceable by performance ratification or estoppal"; <u>Smith v. Richardson</u>, (1898) 77 Mo.App 422 430 "In determining the obligation of a private corporation for acts termed ultra vires, an important distinction is sometimes overlooked… No corporation can bind itself by a contract that is expressly prohibited by its charter, by statute, or

19

general law"; <u>Bissell v. Mich et. Al</u>. (1860) 22 NY 258 "The contracts of corporations which are unauthorized by their charters are to be regarded as illegal and therefore void" because they are "in contravention of public policy"]

26 U.S.C. § 860 governs the establishment and conditions for continued tax status treatment of REMIC's. As mandated by 26 U.S.C. § 860D(a)(4); (a) General rule; For purposes of this title, the terms "real estate mortgage investment conduit" and "REMIC" mean any entity— …(4) as of the close of the 3rd month beginning after the startup day and at all times thereafter, substantially all of the assets of which consist of qualified mortgages and permitted investments,…

Defining the term "Qualified Mortgage", 26 U.S.C. § 860G(a)(3) states; The term "qualified mortgage" means— (A) any obligation (including any participation or certificate of beneficial ownership therein) which is principally secured by an interest in real property and which— (i) is transferred to the REMIC on the startup day in exchange for regular or residual interests in the REMIC, (ii) is purchased by the REMIC within the 3-month period beginning on the startup day if, except as provided in regulations, such purchase is pursuant to a fixed-price contract in effect on the startup day.

Defining the term "Prohibited Transaction" 26 U.S.C. § 860F(a)(2) states in pertinent part; (2) Prohibited transaction; For purposes of this part, the term "prohibited transaction" means— (A) Disposition of qualified mortgage; The disposition of any qualified mortgage transferred to the REMIC other than a disposition pursuant to— (i) the substitution of a qualified replacement mortgage for a qualified mortgage (or the repurchase in lieu of substitution of a defective obligation),..

Determining the tax impact on Prohibited Transactions 26 U.S.C. § 860F(a)(1) states in pertinent part; (a) 100 percent tax on prohibited transactions (1) Tax imposed; There is hereby imposed for each taxable year of a REMIC a tax equal to 100 percent of the net income derived from prohibited transactions.

Under 26 U.S.C. § 860 (The Code), REMIC trusts must generally be comprised of mortgage obligations (Qualified Mortgages) which are transferred to the REMIC on the startup day or purchased by the REMIC within the three month period beginning on the startup day. Additionally, the Code allows that a "defective" mortgage obligation, such as one procured through fraud, may be substituted with a "Qualified Replacement Mortgage" within 2 years of the startup day. (See; 26 U.S.C. § 860G(a)(4)(B)(ii)). Beyond these parameters, any transfer of mortgage obligations to a REMIC trust would be considered Prohibited Transactions.

Plaintiff has alleged that the assignment to the Trust of the subject mortgage was executed and the note was transferred on August 27, 2012. (FAC Id. ¶ 13). The Pooling and Servicing Agreement of the Trust is dated June 1, 2006. (See: Exhibit B; Pooling and Servicing Agreement 1st page)[7]. The PSA also clearly states that the startup date of the Trust is equal to the closing date of the Trust, which is June 23, 2006. (See Exhibit C; Pooling & Servicing Agreement, Article I, "Definitions")[8](See also: FAC Id. ¶ 11). Considering that the assignment of the mortgage and the transfer of the note allegedly took place more than 6 years after the startup date of the Trust, the inescapable conclusion can only be that the assignment and transfer

---

[7] Exhibit B is an excerpt page from the entire Pooling and Servicing Agreement of the American Home Mortgage Assets Trust 2006-3. The complete document can be found on the Securities and Exchange Commissions' public information website at;
http://www.sec.gov/Archives/edgar/data/1369168/000088237706002876/d542626_ex4-1.htm, and is incorporated by reference and entered herein.
[8] Exhibit C is an excerpt page from the entire Pooling and Servicing Agreement which is incorporated by reference and entered herein. See Above.

as alleged by Plaintiff are "Prohibited Transactions" pursuant to the provisions of 26 U.S.C. § 860 *et seq.*

As the assignment and transfer are "Prohibited Transactions", they are subject to a 100% Tax Penalty of the net income derived from said Prohibited Transactions, pursuant to 26 U.S.C. § 860F(a)(1). This causes the imposition of tax on the Trust REMIC, potentially the Certificateholders, and causes the Trust REMIC to fail to further qualify as a REMIC. As noted above, no amendment to the PSA can be ratified if the amendment causes the imposition of any tax on any Trust REMIC or the Certificateholders or causes any such Trust REMIC to fail to qualify as a REMIC (See: Exhibit A *Supra*, PSA Article XI "Miscellaneous Provisions", Section 11.01, "Amendment"). As no amendment to the PSA can be ratified which would allow the Trust to accept the mortgage or note, this renders said assignment and transfer completely, totally and utterly void, void *ab initio*, void from the outset, void from the very beginning, and is not merely voidable.

**IRONICALLY, DEFENDANTS' ARGUMENT IS NOT IN THE BEST INTEREST OF THE TRUST OR THE PARTIES THERETO**

Tax on a prohibited transaction under 26 U.S.C. § 860F equals 100% penalty of the net income derived from the prohibited transaction, which would equal the same result as if the Trust did not own the mortgage to begin with. The Defendants' very argument suggesting that the PSA could be ratified in a manner which would allow the Trust to accept "Prohibited Transactions" under the code, causing a 100% penalty of the net income derived from those transactions, which would equal the same result as if the Trust did not own those mortgages to begin with, and thereby causing the entire Trust to cease to qualify as a REMIC, imposing significantly increased tax liability on the Trust, ultimately causing the ratings of the Certificate's themselves to be relegated to "junk" status, is not only without a doubt <u>not</u> in the

best interests of the Trust, the parties to it, and the Certificateholders, but is preposterous and produces an implausible result.

## CONCLUSION

The transfer and assignment of the note and mortgage in this case is "void" because they were direct violations of an expressly forbidden act of the PSA and a Prohibited Transaction of the IRS Code governing REMIC Trusts. Therefore the foreclosure is void because the Defendant Trust was not a mortgagee at the time of the foreclosure sale and for the reasons as set forth herein above the Plaintiff respectfully requests this Honorable Court deny the Defendants' Motion to Dismiss.


Dated: March 23, 2015


Respectfully Submitted, Plaintiff,
By her Attorney,
Todd S. Dion,


/s/ Todd S. Dion
Todd S. Dion Esq. (6852)
1599 Smith Street
North Providence, RI 02911
401-965-4131 Phone
401-649-4331 Fax
toddsdion@msn.com

# CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2015, a copy of the foregoing document, filed through the CM/ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on the parties listed on the NEF as not receiving electronic notice.


    _/s/  Todd S. Dion_____
Todd S. Dion, Esq.