UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| KATHERINE L. CAITO<br><br>    Plaintiff,<br><br>v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS AND CITIBANK AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2006-3 MORTGAGE-BACKED PASS THROUGH CERTIFICATES SERIES 2006-3<br><br>    Defendants. | CIVIL ACTION NO. 1:13-cv-00429 |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**I. INTRODUCTION**

Plaintiff Katherine Caito ("Caito") misinterprets decisions of courts in the First and Second Circuit, which deny a mortgagor's standing to challenge the assignment of mortgage based on alleged violations of the Pooling and Servicing Agreement ("PSA"), in a further attempt to void the assignment of mortgage at issue in this action. Caito also misinterprets New York trust law in order to void her assignment, misapplies the Internal Revenue Code by asserting a private right of action against defendants under 26 U.S.C. §860, and confuses the standard of review applicable in determining whether she has pleaded facts sufficient to state a claim for which relief can be granted. Caito's opposition appears to respond to arguments these Defendants have not made in requesting dismissal, but to the extent Caito's opposition addresses Defendants' arguments, Caito fails to establish standing to sue.

Mortgage Electronic Registration Systems, Inc. ("MERS") and Citibank as Trustee for American Home Mortgage Assets Trust 2006-3 Mortgage-Backed Pass Through Certificates Series 2006-3 ("Citibank") submit the following in further support of their Motion to Dismiss.

## II. COURTS IN THIS CIRCUIT AND THE SECOND CIRCUIT REJECT CAITO'S STANDING ARGUMENT

Caito argues that the First Circuit Court of Appeals' decisions in *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282 (1st Cir. 2013), *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349 (1st Cir. 2013), and *Wilson v. HSBC Mortg. Services, Inc.*, 744 F.3d 1 (1st Cir. 2014) support her claim that Rhode Island homeowners should have standing to challenge the PSA associated with the securitization of their mortgage loans. (Opposition, Doc. No. 17, pp. 5-8.) The First Circuit, however, has rejected this claim. *Butler v. Deutsche Bank Trust Co. Americas*, 748 F.3d 28 (1st Cir. 2014). In *Butler*, the First Circuit specifically relied on *Culhane* and *Wilson* to conclude that alleged PSA violations constituted voidable, and not void challenges under Massachusetts law, so that a borrower, non-party to the assignment or the PSA, lacks standing to assert these claims. 748 F.3d at 37. The Massachusetts federal district courts, before and after the First Circuit issued *Butler*, have uniformly decided that mortgagors lack standing to challenge an assignment of mortgage based on restrictions in the PSA. *Koufos v. U.S. Bank*, 939 F.Supp.2d 40, 48 (D.Mass. 2013), *Monges v. Wells Fargo Bank, N.A.*, No. 13-11752, 2015 WL 1308146 at *8 (D.Mass. Mar. 23, 2015); *Sullivan v. Bank of New York Mellon*, No. 14-14074, 2015 WL 1254889, at *14-*15 (D.Mass. Mar. 19, 2015), and *Carver v. Bank of New York Mellon*, No. 13-10005, 2014 6983431, at *5 (D.Mass. Dec. 10, 2014),

This Court and the Rhode Island Supreme Court have adopted and endorsed the First Circuit's decisions in *Culhane*, *Woods*, and *Wilson* even though the First Circuit applied Massachusetts law. First, in *Cosajay v. Mortg. Elec. Regis. Sys., Inc.*, 980 F.Supp.2d 236, 243-244 (D.R.I. 2013), this Court recognized that both *Culhane* and *Woods* were holdings issued under Massachusetts law, and not Rhode Island statutory and common law, but concluded that that Rhode Island law was sufficiently similar to apply the First Circuit's reasoning and guidance.

The Rhode Island Supreme Court agreed with this Court and applied *Culhane* on review of a borrower's standing to sue in *Mruk v. Mort. Elec. Regis. Sys., Inc.*, 82 A.3d 527 (R.I. 2013). The Supreme Court then formally adopted the First Circuit's rationale in analyzing the distinctions between a void vs. voidable assignment in *Cruz v. Mortgage Electronic Registration Systems, Inc.*, No. 2012-136-M.P., slip op. at 8 (R.I., filed Jan. 13, 2015). In *Clark v. Mortg. Elec. Regis. Sys., Inc.*, 7 F.Supp.3d 169, 175-179 (D.R.I. 2014), this Court returned to *Culhane* and *Woods*, reviewed the First Circuit's *Wilson* decision, concluded that the legal principles applied under Massachusetts law equally applied under Rhode Island law, and found that a borrower lacks standing to assert a voidable challenge to the assignment agreement. All that Defendants request in this action is that the Court continue to apply the First Circuit's decisions in *Culhane* and its progeny, and in doing so adopt the reasoning and guidance of *Butler* where the First Circuit has concluded that allegations of PSA violations are merely voidable challenges. Although Caito attempts to convince this Court that First Circuit case law supports her standing to sue, she ignores and omits the *Butler* decision, which specifically addresses and rejects her claim.

To distance this case from *Butler*,[1] Caito argues that New York law applies in determining whether she has standing to assert trust violations to challenge assignment and foreclosure. (Opposition, Doc. No. 17, pp. 8-14.) Application of New York law to this action does not produce a result different from the First Circuit's analysis and rejection of Caito's argument and likewise demands dismissal for lack of standing. In *Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 87-88 (2d Cir. 2014), the Second Circuit denied a mortgagor's standing to challenge foreclosure based upon claimed violations of the PSA under New York Trust Law §7-2.4, which Caito relies upon to establish a void challenge in this action. The

---

[1] Caito relegates the *Butler* decision and her attempt to refute controlling precedent to a footnote in her opposition memorandum. (Opposition, Doc. No. 17, p. 2 fn. 2.)

34506345v1 0948607

Second Circuit found that New York Trust Law did not void the assignment. Rather, the assignment is merely voidable because only beneficiaries of a private trust may enforce the terms of the trust and because trust beneficiaries generally can ratify the unauthorized acts of trustees. *Id.* at 89. In doing so, the Second Circuit rejected the decisions issued in *Wells Fargo Bank, N.A. v. Erobobo*, No. 31648/2009, 2013 WL 1831799 (Sup.Ct.Kings Co. Apr. 29, 2013), *Aurora Loan Services LLC v. Scheller*, No.2009-22830, 2014 WL 2134576 (N.Y.Sup.Ct.Suffolk Co. May 22, 2014), and *Glaski v. Bank of America, N.A.*, 218 Cal.App.4th 1079, 160 Cal.Rptr.3d 449 (5th Dist. 2013), which Plaintiff relies upon in this action to establish a void challenge. *Id.* at 90.[2]

Moreover, a majority of courts applying New York law have elected to follow the *Rajamin* analysis while refuting the minority of decisions upon which Caito relies. In *Anh Nguyet Tran v. Bank of New York*, No. 13 CIV. 580 RPP, 2014 WL 1225575, at *5 (S.D.N.Y. Mar. 24, 2014) *aff'd*, 592 F. App'x 24 (2d Cir. 2015), the Southern District determined that "better-reasoned cases" hold that a beneficiary can ratify an *ultra vires* act of a trustee. In *Berezovskaya v. Deutsche Bank Nat. Trust Co.*, No. 12 CV 6055 KAM, 2014 WL 4471560, at *7 (E.D.N.Y. Aug. 1, 2014) *report and recommendation adopted*, No. 12-CV-6055 KAM CLP, 2014 WL 4470786 (E.D.N.Y. Sept. 10, 2014), the Eastern District noted that the *Erobobo* court did not consider the "well-settled rule" that a beneficiary can render a trustee's *ultra vires* act voidable, rather than void, through ratification. In *Barnett v. Countrywide Bank F.S.B. et al.*, No. 14-CIV-4270, 2014 WL 6603986, at *4-*5 (E.D.N.Y. Nov. 20, 2014), the Eastern District held acts that violate the PSA are voidable. Lastly, in *U.S. Bank Nat. Ass'n v. Duthie*, 45 Misc.3d

---

[2] Another California appellate court critical of *Glaski* concluded that the *Glaski* court's reading of Section 7-2.4 would actually harm trust beneficiaries: "We simply do not see how the New York legislature could have intended to allow a debtor in a commercial transaction to invoke the provisions of a trust to which it is a stranger in order to frustrate collection of the debt." *Mendoza v. JPMorgan Chase Bank, N.A.*, 228 Cal.App.4th 1020, 1031 (2014), (quoting *Bank of America, N.A., v. Bassman FBT, LLC*, 2012 Ill.App.2d 110729, *P38 (2012)).

4

1218(A), 3 N.Y.S.3d 287, 2014 N.Y. Slip. Op. 51626(U), at *3-*4 (Sup.Ct.Kings Co. Nov. 17, 2014), the New York Supreme Court agreed with and accepted the Second Circuit's decision in *Rajamin* to find that the borrower lacked standing to assert noncompliance with the PSA.

In this case, Plaintiff has no legal basis to argue for standing under the *Culhane* line of decisions from the First Circuit, only to disregard *Butler* on the grounds that the mortgagor waived the right to argue that New York law applied because New York law does not support her position. The First Circuit decided *Butler* by following its own standing analysis under Massachusetts law in *Culhane*, *Woods*, and *Wilson* to reach the conclusion that alleged violations of the PSA are voidable challenges. Even if this Court were to analyze standing to sue beyond the *Butler* decision and by application of New York law, courts applying New York law have overwhelmingly adopted and endorsed the position taken by the First Circuit in *Butler*. In fact, the Second Circuit, applying New York law as demanded by Caito, cited *Butler* with favor in finding that a transfer into trust alleged to have violated the terms of a PSA is voidable as opposed to void. *Rajamin*, 775 F.3d at 90. Whether this Court elects to apply the *Culhane* line of decisions, or decision from the Second Circuit, or decisions from New York state courts, the overwhelming majority of cases reject Caito's standing argument on the grounds that PSA violations are mere voidable challenges.

### III. CAITO HAS NO BASIS TO EXCEPT HER CASE FROM THE WEALTH OF DECISIONS DISMISSING A MORTGAGOR'S PSA CHALLENGE

Caito attempts to distinguish her case from the majority of decisions dismissing similarly pleaded actions for lack of standing by arguing that the PSA at issue in this action expressly prohibits ratification. (Opposition, Doc. No. 17, pp. 16-18.) Courts applying New York law have dismissed PSA challenges for lack of standing because a trustee's unauthorized acts are generally subject to ratification by beneficiaries. *Rajamin*, 775 F.3d at 88 (citing *King v. Talbot*,

5

40 N.Y. 76, 90 (1869); *Mooney v. Malden*, 193 A.D.2d 933, 933-34, 597 N.Y.S.2d 775, 776 (3d Dep't). The Second Circuit, in *Rajamin*, 775 F.3d at 88, found that the ability of beneficiaries to ratify a trustee's unauthorized acts is "harmonious with the overall principle that only trust beneficiaries have standing to claim a breach of trust." Because New York law generally permits beneficiaries to ratify a trustee's unauthorized acts, New York courts have concluded that a trustee's acts in contravention of EPTL §7-2.4 are voidable despite the statute's language.

Caito's claim that the PSA prohibits ratification is not supported by facts or by law. According to Caito, the PSA prohibits ratification of a trustee's unauthorized act because the PSA Section 11.01 prohibits amendments that jeopardize the trust's status as a real estate mortgage investment conduit ("REMIC"). (Caito Opposition, Doc. No. 17, pp. 17-18.) Caito does not produce any documents, information, or allege any facts to demonstrate that the PSA expressly prohibits ratification and instead speculates that ratification is prohibited because "an act that is ratified is essentially an amendment to the Trust." (*Id.* at p. 17.) There is no support for Caito's position that ratification and amendment are synonymous actions.

Ratification differs from an amendment because it is a "confirmation and acceptance of a previous act thereby making [the] act valid from the moment it was done" while an amendment is a "formal revision or addition proposed...to…[an] instrument." *Black's Law Dictionary* 81, 1269 (7th ed. 1999). Ratification, by definition alone, does not alter, add to or revise a contract in any way. Instead, ratification binds an act that was already completed but not done in a way that initially produced a legal obligation. For example, in *Clark v. Mortg. Elec. Regis. Sys., Inc.*, 7 F.Supp.3d 169, 176-177 (D.R.I. 2014), this Court, while reviewing voidable contracts under Rhode Island law, found that "[a] contract executed on behalf of a corporation without proper authority is not void, but only voidable, and can be ratified by the corporation after its signing."

6

*See also Confirmation or ratification of a defective instrument*, 17 C.J.S. Contracts §74 ("A defect or irregularity in the method of executing a written instrument evidencing a contract, or even want of execution, may be confirmed or ratified."); *Voidable Contracts,* Restatement (2d) of Contracts §7 (1981) ("A voidable contract is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance.").

Here, Caito does not explain how or why ratification is essentially an amendment. Moreover, Caito mistakenly relies on the PSA's amendment provision as an express prohibition of a ratification defined above and described by this Court. Section 11.01 of the PSA provides that the agreement may be amended "(i) to cure any ambiguity, (ii) to correct or supplement any provisions herein which may be defective or inconsistent with any other provisions herein or to correct any error, (iii) to amend this Agreement in any respect subject to…[an opinion of counsel]…and…[a letter from each Rating Agency]…or (iv) if such amendment…is reasonably necessary to comply with any requirements imposed by the [Internal Revenue] Code." (Pooling and Servicing Agreement Excerpt, *Exhibit A*.) The PSA limits the authority of the Trustee's ability to consent to any amendment unless that amendment will not result in the imposition of any tax on any Trust REMIC. (*Id.*) No part of this PSA section, or any section of the PSA for that matter, prohibits the beneficiaries' ratification of a trustee's unauthorized act. In addition, ratification of the deposit of Caito's loan into trust after the trust's closing date does not require the trust to cure any ambiguity in the PSA, does not require a correction or supplement of any provisions in the trust, and does not otherwise require the trustee to amend or alter any provision

within the PSA. Instead, ratification authorizes the trustee to receive Caito's loan into trust as if it had been deposited before the closing date.[3]

There is no amendment to the PSA at issue in this litigation, and Caito has not produced any document or alleged any fact to establish that the PSA prohibits ratification. Without any facts to establish an express prohibition on ratification or that there is even an act by the trustee necessitating ratification, application of New York law requires dismissal of the action for lack of standing because Caito has only asserted a voidable challenge to the assignment of mortgage and the Defendants' authority to foreclose.

### IV. CAITO HAS NO LEGAL BASIS TO ASSERT VIOLATIONS OF 26 U.S.C. §860 TO CHALLENGE DEFENDANTS' FORECLOSURE

Caito seeks to void the assignment of mortgage by arguing that the deposit of her loan into trust was a prohibited transaction under the Internal Revenue Code and subject to 100% taxation. (Opposition, Doc. No. 17, pp. 18-22.) Caito ignores the fact that she lacks standing to enforce these regulations on the Defendants. The REMIC Regulations are the exclusive statutory mechanism for the Internal Revenue Service ("IRS") to impose federal tax obligations on Real Estate Mortgage Investment Conduits ("REMICs"). *See* 26 U.S.C. § 860A(a)(2010). Through these regulations, the IRS imposes a 100 percent tax on the net income derived from a "prohibited transaction:" a defined term that includes several categories of dispositions of qualified mortgages, income from non-permitted assets, compensation for services, and gains from the disposition of cash flow investments. 26 U.S.C. §860F(a).

---

[3] The entire ratification argument by Caito is predicated on his faulty application of New York's Estates, Powers & Trust Law ("EPTL"). The statute in question applies only to a "sale, conveyance or other act *of the trustee* in contravention of the trust ..." (EPTL, § 7-2.4, emphasis added.) But the transfer of note ownership to a trust is not an "act of the trustee." It is an act of the transferor. So, the statute does not apply to an allegedly untimely transfer of a promissory note into a securitized trust. *Deutsche Bank Nat. Trust Co. v. Stefiei*, No. 10 C 50317, 2013 WL 1103903, *3-4 (N.D. Ill., Mar. 15 2013).

34506345v1 0948607

Although courts in this jurisdiction have not yet addressed whether a mortgagor has standing to challenge an assignment of mortgage based upon a violation of the REMIC Regulations, courts in other jurisdictions have uniformly concluded that a borrower's allegation of violations of REMIC Regulations fails to state a claim because of borrowers' lack of standing. In *Obal v. Deutsche Bank Nat. Trust Co.*, No. 14-CV-2463, 2015 WL 631404, at *1 (S.D.N.Y. Feb. 13, 2005), the borrower challenged foreclosure because the assignment occurred more than three months after the trust's closing date in violation of the REMIC Regulations. The Southern District dismissed borrower's complaint for lack of standing to invalidate an assignment that violates the REMIC Regulations finding no private cause of action to enforce these provisions of the federal tax code. *Id.* at *4. Relying on case law from other jurisdictions consistent with New York federal case law, the court concluded that "it is for the IRS, and not private citizens, to enforce the Internal Revenue Code." *Id.*

Similarly, in *Mohlman v. Long Beach Mortgage*, No. 12-10120, 2013 WL 490112, at *5 (E.D. Mich. Feb. 8, 2013), plaintiff argued that the assignment of mortgage violated the REMIC Regulations on the basis of faulty bookkeeping practices and unlawful conveyances of mortgages. Although the Eastern District of Michigan held that plaintiff failed to allege that his mortgage had been transferred into a REMIC, the court concluded that even if he had made this claim, "[the claim] would fail because there is no private right of action available to challenge any perceived violation of 26 U.S.C. §§ 860A–G." *Id.* at *5. The plaintiff "lack[ed] standing to challenge the validity or any perceived violations of such transactions" because "a private right of action does not arise automatically under the REMIC rules," and so "violating the REMIC rules does not establish a defect in ownership of the mortgage." *Id.* (citing *Livonia Prop. Holdings, L.LC. v. 12840–12976 Farmington Rd. Holdings, L.L.C.,* 717 F.Supp.2d 724, 748

9

(E.D.Mich. 2010)). In *Evangelist v. Green Tree Servicing, LLC*, No. CIV. 12-15687, 2013 WL 2393142, at *7 (E.D. Mich. May 31, 2013), the Eastern District of Michigan once again held that plaintiff had "no viable cause of action" to allege violations of REMIC Regulations because "REMIC statutes and regulations . . . are tax laws," and so "[e]ven if they were violated, the harm was to the government, not to plaintiff." Finally, in *Hayes v. Bank of Am.*, No. CIV.A. H-12-377, 2013 WL 5352704, at *9 (S.D. Tex. Sept. 23, 2013), the Southern District of Texas concluded that "[p]laintiff [could not] maintain a claim for a REMIC violation" in part because he "ha[d] not shown that he has standing to bring a private right of action for an income tax violation or that the court has jurisdiction in the first instance over such a claim."

In this case, Caito argues that the assignment of mortgage and transfer of note allegedly occurred more than six years after the startup date of the trust, concludes that this transfer is a prohibited transaction under the Internal Revenue Code, is subject to a 100% tax penalty on net income, and jeopardizes the trust's REMIC status. (Caito's Opposition, Doc. No. 17, p. 22.) Caito has not demonstrated standing to assert a private right of action under 26 U.S.C. §860F much less to void the assignment of mortgage based upon an alleged violation of the Internal Revenue Code. There is no private right of action under Internal Revenue Code for Caito to allege violations of this statute. Moreover, while Plaintiff insists that enforcement of 26 U.S.C. §860F is necessary to protect the interests of the trust beneficiaries, Plaintiff is not a beneficiary of the trust and instead seeks to vindicate her own rights separate, apart and potentially adverse to the beneficiaries of the trust. Finally, while Caito complains that the alleged prohibited transaction will result in a monetary penalty that is not in the best interests of the trust, her theory on the trust's best interests provides no basis to void the assignment of mortgage.

# V. CAITO HAS MISINTERPRETED THE APPROPRIATE STANDARD OF REVIEW, MISIDENTIFIED THE DEFENDANTS IN ARGUING AGAINST DISMISSAL, AND ASSIGNED ARGUMENTS TO DEFENDANTS THAT WERE NEVER PRESENTED.

Caito begins her opposition to Defendants' Motion to Dismiss by applying the wrong standard of review. (Opposition, Doc. No. 17, p. 4.) Caito argues that the state court standard of review should apply. (*Id.*) In *Clark*, 7 F.Supp.3d at 174, this Court drew an important distinction between the standard of review that Rhode Island state courts use in deciding motions to dismiss and the federal standard:

> State courts grant motions to dismiss "when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiff's claims." *Palazzo v. Alves*, 944 A.2d 144, 149-50 (R.I. 2008). Conversely, in federal court, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). The Rhode Island Supreme Court recognized that the federal standard is more stringent and "cannot be blended with the traditional Rhode Island standard." *Chunn*, 84 A.3d at 422 n. 5.

Moreover, this Court observed that a complaint filed in federal court must allege facts enough to raise the right to relief above the speculative level and need not accept all allegations as true, including conclusory statements. *Id.* Contrary to Caito's position, the Court need not accept all of her allegations as true, and need not require the Defendants to prove beyond reasonable doubt that Caito would not be entitled to relief under any set of facts. Instead, the federal standard of review permits this Court to disregard the truth of Caito's speculative comparison of ratification to amendment and other allegations that are not supported by facts.

Plaintiff also assimilates this case to the decision reached in *Johnson v. Wells Fargo Bank, N.A.*, 744 F.3d 539, 541 (8th Cir. 2014) by arguing that the Defendants are Wells Fargo, and then accuses Defendants, apparently as Wells Fargo, of attempting to argue a contrary

11

position. (Caito's Opposition, Doc. No. 17, p. 12.) These Defendants are not Wells Fargo or connected to Wells Fargo and certainly do not take the same position Plaintiff alleges against Wells Fargo. Moreover, both the *Rajamin* decision from the Second Circuit and the *Butler* decision from our First Circuit, as well as a wealth of decisions from federal district court and state courts, support Defendants' position that Caito has alleged facts that would only prove a voidable assignment under Rhode Island, Massachusetts or New York law.

Review of the law applicable to this case, including the standard of review and the substantive law and arguments these Defendants have raised, compels dismissal of this action. Caito has elected to oppose Defendants' Motion to Dismiss with a decidedly minority position on standing that has succumbed to rejection and repudiation in this and other circuits. Measuring her amended complaint against well settled law of this and other jurisdictions, Caito has failed to allege facts sufficient to demonstrate standing to challenge the assignment of mortgage and Defendants' authority to foreclose, and as such this Court should dismiss the case.

## VI. CONCLUSION

For the reasons stated above, and for the reasons stated in Defendants' Memorandum of Law in Support of Motion to Dismiss Defendants, Citibank as Trustee for American Home Mortgage Assets Trust 2006-3 Mortgage-Backed Pass Through Certificates Series 2006-3 and Mortgage Electronic Registration Systems, Inc., respectfully request dismissal of Plaintiff's Amended Complaint.

34506345v1 0948607

Respectfully submitted,

CITIBANK AS TRUSTEE FOR AMERICAN
HOME MORTGAGE ASSETS TRUST 2006-3
MORTGAGE-BACKED PASS THROUGH
CERTIFICATES SERIES 2006-3 AND
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By Their Attorney,

*/s/ Samuel C. Bodurtha*
Samuel C. Bodurtha, #7075
HINSHAW & CULBERTSON LLP
321 South Main Street
Suite 301
Providence, RI 02903
(401) 751-0842
(401) 751-0072 (facsimile)

Dated: April 10, 2015.

## CERTIFICATE OF SERVICE

I, Samuel C. Bodurtha, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 10, 2015.

*/s/ Samuel C. Bodurtha*
Samuel C. Bodurtha